IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JOINER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LYNARD L. JOINER, APPELLANT.

Filed June 30, 2026.    No. A-25-972.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Amanda R. Baskin for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

Lynard L. Joiner appeals from his plea-based convictions and sentences imposed by the district court for Lancaster County, arguing that he was denied effective assistance of counsel in the plea proceedings and that the sentences imposed are excessive. For the reasons stated herein, we affirm the judgment of the district court.

## BACKGROUND

Joiner was charged by information in the district court with count 1, operating a motor vehicle to avoid arrest, subsequent offense, a Class IV felony, and count 2, driving while under the influence (DUI), second offense, a Class W misdemeanor. See, Neb. Rev. Stat. § 28-905 (Reissue 2016); Neb. Rev. Stat. §§ 60-6,196 & 60-6,197.03 (Reissue 2021). Pursuant to a plea agreement, the State filed an amended information, which amended count 1 to operating a motor vehicle to

avoid arrest, first offense, a Class I misdemeanor; count 2 remained the same. In exchange, Joiner entered no contest pleas to the amended charges. The State provided the following factual basis for the pleas.

Police officers observed a vehicle driving 47 miles per hour in a 40 mile per hour zone. The officers attempted to perform a traffic stop. The vehicle pulled into a business parking lot, slowed down, but did not come to a complete stop. When the officers activated their siren, the vehicle drove away at a high speed. The officers did not pursue, but they collected the license plate information and went to the registered address.

Upon their arrival, the officers made contact with Joiner, who was in the driver's seat of the vehicle. He smelled of alcohol, his speech was slurred, and his eyes were bloodshot. There were also three "shooters" of alcohol located in the vehicle.

When asked why he left the traffic stop, Joiner denied doing so. Sobriety tests were offered but Joiner declined, and he also refused a breathalyzer test. Joiner was taken into custody because the officers believed him to be intoxicated and unsafe to operate a motor vehicle. Joiner was then taken to jail where formal testing was performed, the results of which showed Joiner's blood-alcohol content to be over the legal limit.

After the State's recitation of facts, the court accepted Joiner's pleas and adjudged him guilty of the charges in the amended information. The State then offered proof of Joiner's previous DUI conviction to support the present conviction of a second offense DUI, which the court accepted. The court ordered a presentence investigation report (PSR) be completed and scheduled the sentencing hearing.

At the sentencing hearing, the court sentenced Joiner on count 1, to 365 days' incarceration, and on count 2, to 180 days' incarceration and a $500 fine. The sentences were ordered to run consecutively, and he was given credit for 12 days' time previously served. Joiner's driver's license was also revoked on count 1 for a period of 1 year, and on count 2, for a period of 18 months. Joiner now appeals.

## ASSIGNMENTS OF ERROR

Joiner assigns, restated and reordered, that (1) he received ineffective assistance of counsel in the plea proceedings and (2) the district court abused its discretion by imposing excessive sentences.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion.

*State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Geller*, 318 Neb. 441, 16 N.W.3d 365 (2025).

ANALYSIS

*Ineffective Assistance of Trial Counsel.*

Joiner, through new counsel on appeal, assigns that his trial counsel was ineffective by advising him that the district court would order a sentence of 10 days of house arrest, a fine, and a license revocation, a lesser sentence than what was actually imposed. Joiner asserts that "such an improper guarantee by trial counsel constituted deficient performance, which prejudiced [him] by discouraging him from taking the case to trial." Brief for appellant at 15.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *Blaha, supra.*

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Haas, supra.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Here, the record discloses the following colloquy:

> THE COURT: So other than that plea agreement, has anyone associated with law enforcement or the County Attorney, or anyone, forced you or threatened you or promised you anything to get you to enter your plea to these charges?
>
> [Joiner]: No, sir.

THE COURT: Did anyone make any kind of a promise to you about what the actual sentence will be?

[Joiner]: No, sir.

Given Joiner's unequivocal representations to the court that no promises were made by anyone regarding his sentence, his claim to the contrary is refuted by the record.

Joiner acknowledges several cases in which the Nebraska Supreme Court has rejected similar claims of ineffective assistance because they were refuted by the record. See, e.g., *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015); *State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014); *State v. Thoi Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). However, Joiner asks us to reach a different conclusion here, and to preserve this claim for postconviction review, arguing that his statements to the court during the plea hearing were made under a "great deal of stress and pressure" and that he was not "accurately processing everything that was being said during the plea colloquy." Brief for appellant at 17, 18. Joiner alleges that the circumstances resulted in him "not identifying an opportunity to speak up about the sentencing assurances that were made to him by his trial counsel." *Id*. at 18. In support of his argument, Joiner points out that he did not graduate from high school or obtain a GED, and that he had told the district court he had previously been treated for a "bunch" of mental health conditions. *Id*. We decline Joiner's invitation to distinguish the case at hand from precedent.

Here, the record shows that, at the plea hearing, Joiner stated that no one had used words or phrases he did not understand, and if there was something he needed explained to him or if he needed help reading, writing, or understanding something, he was comfortable asking for help, although he never did so. Joiner also expressly told the court he was not having any mental health problems at the time of the hearing, that he felt confident and clearheaded, and that the mental health issues he had previously been treated for did not affect his ability to make "good decisions" during the hearing. Moreover, the district court stated that, based on its observations of Joiner's speech, his manner, his attentiveness throughout the plea hearing, his following of all the questions and his logical answers, he appeared to have understood the proceeding and to be physically and mentally healthy. These portions of the record expressly refute Joiner's claim that his lack of education or alleged mental health deficiencies prevented him from accurately understanding the court or identifying the opportunity to inform it of his counsel's alleged sentencing assurances.

Furthermore, the Supreme Court has previously declared:

If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights; whether the defendant is fully aware of his surroundings; whether defendant is satisfied as to counsel's services and representation; and whether it is true that defendant was not improperly influenced by threats or promises; and whereat the court is further told by the defendant of facts which leave no doubt as to defendant's guilt and the voluntary and knowledgeable entry of a plea of guilty, all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*State v. Scholl*, 227 Neb. 572, 580, 419 N.W.2d 137, 142 (1988).

Here, we are faced with the decision of whether to rely upon the official transcript of Joiner's plea hearing, which refutes that he had been promised specific sentences in exchange for entering his pleas, or to reject this portion of the record based on Joiner's assertion on appeal that his statements to the district court were untruthful. To find Joiner made these assertions to the court but did not mean them would indicate that the plea proceedings, and the time and attention given by the district court to assure they were done in accordance with the law and protective of Joiner's rights, were meaningless. We decline to make such a "mockery" out of the proceedings undertaken in the district court. *Id.*

Thus, because the record refutes Joiner's allegation that his trial counsel improperly advised him as to the sentences which would be imposed, Joiner is not entitled to relief on that ground. We reject this assigned error.

*Excessive Sentences.*

Joiner assigns the sentences imposed by the district court are excessive and constitute an abuse of discretion. He argues that the district court failed to adequately and properly consider his social background, including "his early exposure to alcohol, his lack of robust social support, and his mental health needs," as well as the lack of violence involved in the commission of the offense. Brief for appellant at 21. Joiner also asserts that the "fair and just sentence is a period of probation." *Id.* at 22.

The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Johnson*, 33 Neb. App. 194, 11 N.W.3d 703 (2024). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *Id.* Here, Joiner was convicted of count 1, a Class I misdemeanor, punishable by not more than 1 year incarceration, a $1,000 fine, or both; and count 2, a second offense Class W misdemeanor, punishable by a mandatory minimum of 30 days', and a maximum of 6 months', incarceration, and a $500 fine. See Neb. Rev. Stat. § 28-106 (Reissue 2016). On count 1, Joiner was sentenced to 365 days' incarceration, and on count 2, he was sentenced to 180 days' incarceration and a $500 fine. Joiner's sentences are within the statutory limits. We therefore review them only for an abuse of discretion.

In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *Johnson, supra.* When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025). A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

At the sentencing hearing, the court specifically recounted the "things that [it] considered in determining the appropriate sentence[s] in this case." The court stated that the law required it

"to examine a number of statutory factors," and then it specifically noted Joiner's age, education, his "social and cultural background," including his previous places of residence, single marital status, the fact he had multiple children, and that he was currently employed. The court also addressed Joiner's "extensive" criminal history and previous incarceration sentences. The court additionally specified it had considered the "facts and circumstances, nature of the offenses, and the motivation for the offenses," and noted that driving while intoxicated and operating a vehicle to avoid arrest were both dangerous to the community and safety of other people. The court ultimately declared it had found "imprisonment of [Joiner] [was] necessary for the protection of the public" and that "risk [was] substantial, during a period of probation, he would engage in additional criminal conduct, and a lesser sentence would appreciate the seriousness of [his] crimes and promote disrespect for the law."

The district court's statements make clear that it had found Joiner was not a candidate for probation and that it considered the relevant statutory factors in deciding his sentences. Although the court did not specifically discuss Joiner's reported early exposure to alcohol, his alleged mental health needs and lack of social support, or the violence of the crime, a sentencing court is not required to articulate on the record that it has considered each sentencing factor or to make specific findings as to the facts that bear on each of those factors. See *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). Nonetheless, this information was contained within the PSR. The court had full access to the PSR and its references to the report during the sentencing hearing indicate that it had thoroughly reviewed it.

There are factors in the record to support the sentences, and there is no indication that the court relied on irrelevant matters or based its sentences on improper factors. Moreover, we note that Joiner received the substantial benefit of the plea agreement by reducing count 1 from a Class IV felony, punishable by a maximum of 2 years' incarceration and 12 months' post-release supervision, a $10,000 fine, or both, to a Class I misdemeanor. See Neb. Rev. Stat. § 28-105 (Supp. 2025). Accordingly, we cannot say the district court abused its discretion when it sentenced Joiner. This assigned error fails.

CONCLUSION

For the foregoing reasons, we affirm the judgment and sentences of the district court.

AFFIRMED.